(47 Misc. Rep. 516.)

O'NEIL, Commissioner, v. MANSFIELD, Mayor. CARROLL,
Commissioner, v. SAME. BRANAGAN, Commissioner,
v. SAME. HART, Commissioner, v. SAME.

(Supreme Court, Special Term, Onondaga County. June, 1905.)

1. MUNICIPAL CORPORATIONS—OFFICERS—REMOVAL.

Oswego City Charter, § 63, as amended by Laws 1902, p. 551, c. 207, authorizing the mayor to remove for cause any one appointed to office by him, refers to the officers appointed by the mayor, and not to individual appointments.

2. COURTS—JURISDICTION—APPEALS—SPECIAL TERM.

Under Oswego City Charter, § 63, as amended by Laws 1902, p. 551, c. 207, authorizing the mayor to remove for cause any one appointed to office by him, and providing that upon conviction of the cause charged the accused may appeal to the Supreme Court from the judgment of conviction, an appeal lies to the Special Term, and not to the Appellate Division.

95 N.Y.S.—64

3. MUNICIPAL CORPORATIONS—REMOVAL OF OFFICERS—APPEAL.

Under Oswego City Charter, § 63, as amended by Laws 1902, p. 551, c. 207, authorizing the mayor to remove for cause any one appointed to office by him, and providing that upon conviction of the cause charged the accused may appeal to the Supreme Court, it is proper procedure, on appeal from the mayor's action in removing city officers, to order the mayor to certify and return a record of his proceedings in relation to the removal of the officers. and to show cause why the appeal should not prevail and his proceedings be reversed and set aside.

4. SAME—NATURE OF PROCEEDINGS—RIGHTS OF ACCUSED.

Under Oswego City Charter, § 63, as amended by Laws 1902, p. 549, c. 207, authorizing the mayor to remove for cause any one appointed to office by him after an opportunity has been given to the appointee to be heard, defining the causes of removal, and providing that upon conviction of the cause charged the accused may appeal to the Supreme Court, the mayor, in removing officers, must conduct a judicial investigation, and must not act arbitrarily, but upon proof of charges of sufficient gravity to authorize such removal. The accused, on his side, may demand the production of witnesses, that such witnesses be sworn, and that he be given an opportunity to cross-examine them and call other witnesses in his defense; and he also has the right to be represented by counsel.

5. COSTS—SPECIAL PROCEEDINGS—DISCRETION OF COURT.

Under Oswego City Charter, § 63, as amended by Laws 1902, p. 551, c. 207, authorizing the mayor to remove for cause any one appointed to office by him, and providing that upon conviction of the cause charged the accused may appeal to the Supreme Court, an appeal from an order removing an officer is, under Code Civ. Proc. § 3334, defining special proceedings as prosecutions other than actions for the enforcement or protection of a right or redress of a wrong, is a special proceeding and costs may, in the discretion of the court, be awarded at the rates allowed for similar services in an action, as provided by Code Civ. Proc. § 3240.

Peter O'Neil, John Carroll, William Branagan, and Fred M. Hart, commissioners of works of the city of Oswego, were severally removed from office by James E. Mansfield, mayor of said city, and severally appeal to the Supreme Court, as provided by section 63 of the charter of said city (Laws 1902, p. 551, c. 207). Action of mayor reversed.

H. C. & E. J. Mizen, for appellants.
John Tiernan, for respondent.

ANDREWS, J. On May 3, 1905, Peter O'Neil, John Carroll, William Branagan, and Fred M. Hart were the commissioners of works of the city of Oswego. On that day the mayor of that city removed O'Neil, Carroll, and Branagan from office, and on May 5th he removed Hart. The charter of the city of Oswego provides that there shall be four commissioners of works, who shall be appointed by the mayor. These commissioners "may be removed by the mayor for official or other misconduct upon proof, but not otherwise. Such commissioners shall be furnished with a copy of the charges preferred and an opportunity be given for a defense thereof." Charter, Laws 1895, p. 661, c. 394, § 129. The charter also, in defining the duties and powers of the mayor, provides by section 63, as amended by chapter 207, p. 551, of the Laws of 1902:

"The mayor shall have the power to remove for cause any one appointed to office by him, after an opportunity has been given to said appointee to be heard. Cause for removal is hereby defined to be, among other things, disobedience of lawful orders or instructions, incapacity, incompetency, corruption in office, neglect of duty, intemperance, conviction of crime, or anything

prejudicial to the best interests of the city, or any or either board or depart-
ment thereof. Provided, however, that upon conviction of the cause or causes
charged, the accused shall have the right to appeal to the Supreme Court of
the state of New York from such conviction or judgment of conviction, both
on the law and facts, or either, or may review such conviction or judgment
of conviction, by writ of certiorari issued out of said Supreme Court, and
whichever remedy of appeal or review may be adopted by the said accused,
the proceedings in either case, shall be governed to final completion in all
things by the rules and practice of said Supreme Court."

The two sections are entirely consistent with each other and both are
applicable to such a proceeding as the present. It should also be ob-
served that the power given by section 63 to the mayor to remove "any
one appointed to office by him" does not refer to an individual appoint-
ment, but to those officers who are appointed by the mayor. Acting
under the provisions of section 63, the above-named commissioners have
appealed from the action of the mayor to the Special Term of the Su-
preme Court; and the first question that arises is whether that court has
jurisdiction to entertain such an appeal. It is claimed that the appeal
to the Supreme Court referred to is an appeal to the Appellate Division
of that court, and not to the Special Term.

In my opinion the Special Term has jurisdiction. The writ of cer-
tiorari is heard by the Appellate Division. It is heard upon a return
of all the proceedings had, and brings up for review the action of the
inferior body or officer both upon the law and the facts. Practically
the same questions arise and the same principles govern as in case of
an appeal. If the appeal, therefore, is to the Appellate Division, the
Legislature has created in reality but one remedy in case of the im-
proper removal of an officer, instead of two, as seems to have been its
intention. There are many analogous cases where the Legislature has
provided for a prompt and summary review of the actions of officers
or bodies. Jurisdiction in these cases is conferred upon the Supreme
Court at Special Term, for the reason that the Appellate Division is
often not in session, and a reference to that court would involve con-
siderable delay.

Section 27 of the general corporation law (Laws 1892, p. 1810, c.
687), for instance, provides that any person aggrieved by any corporate
election may apply to the Supreme Court in a summary manner, and it
may hear and determine such election, and reverse the same and set it
aside, if not in accordance with law. Section 63 of the insanity law
(Laws 1896, p. 495, c. 545) provides that a person committed pursuant
to said law, if dissatisfied with the final order of the judge or justice
committing him, may appeal from such order to a justice of the Su-
preme Court. Section 2471a of the Code of Civil Procedure provides
that any public officer may apply to a justice of the Supreme Court
for an order citing any person to show cause why such person should
not deliver over the books and papers of any public office withheld by him.
Section 11 of the primary election law (Laws 1898, p. 331, c. 179, as
amended by Laws 1899, p. 995, c. 473) provides that, in addition to the
remedies by mandamus and certiorari, the Supreme Court shall have
summary jurisdiction to review any action or neglect of any officer or
member of a political convention, or any inspector of election, or any
other public officer or board, with regard to the right of any person to

participate in a primary election, or with regard to any other right given by that statute to said person. A reference to the Code of Civil Procedure, furthermore, leaves no doubt as to the meaning of the Legislature when it speaks of an appeal to the Supreme Court of the state of New York.

Prior to the enactment of the new Constitution, section 2 of the Code of Civil Procedure enumerated the courts of record of the state. Among them was the Supreme Court. The General Term was not mentioned. Now the same section enumerates as a court of record, not only the Supreme Court, but the Appellate Division of the Supreme Court; and section 17 provides that each Appellate Division shall have its own seal. It may be said as a general rule that to-day any reference in the Code or in the statutes to the Supreme Court is to the Special or Trial Terms thereof. This well appears by an examination of section 1340 of the Code. Prior to 1895, it provided that an appeal from a final judgment rendered in a County Court should be taken to the Supreme Court. If the respondent is right as to the meaning of similar words used in the charter, no change in this section was necessary. The Legislature thought otherwise, for the same section now provides that the appeal shall be taken to the Appellate Division. Section 1344 still further marks the distinction by providing that appeals from certain inferior courts may be heard by the Appellate Division, or by such justice or justices of the Supreme Court as may be designated for that purpose by the Appellate Division. Section 1345 also differentiates a judgment or order of the Appellate Division from a judgment or order of the Supreme Court. Again, section 2570 of the Code prior to 1895 provided that an appeal from a decree of the Surrogate's Court should be taken to the Supreme Court. As it stands to-day the section provides that an appeal shall be taken to the Appellate Division of the Supreme Court. Section 3188 is important. It provides that an appeal may be taken to the Supreme Court from a judgment of the City Court of New York, where an appeal may be taken to the Appellate Division of the Supreme Court from a judgment in the Supreme Court. Section 3191 provides that from such judgment of the Supreme Court made on appeal, an appeal may be taken to the Appellate Division. Again, section 3213 provides that an appeal from a judgment of the district court of New York may be taken to the Supreme Court, and shall be heard in such manner and by such justice or justices as the Appellate Division shall direct.

The Constitution itself makes a similar distinction. Section 5 of article 6 provides that appeals from certain inferior courts shall be heard in the Supreme Court in such manner and by such justice or justices as the Appellate Divisions in the respective departments, which include New York and Buffalo, shall direct. The only instance I have been able to discover where such a construction as that contended for by the respondent is given is as to section 517 of the Code of Criminal Procedure. It allows the defendant to appeal from a judgment of conviction to the Supreme Court. Evidently, however, the failure to amend this section in 1895 was a mere oversight, which the courts have corrected; for in sections 518 and 770, where the Code formerly spoke of appeals to the Supreme Court, it now speaks of appeals to the Appellate

Division. In view, therefore, of the evident intent of the Legislature; in view of the evil to be redressed and the provisions of other acts; finally, in view of the meaning which must be given to similar words used in the Code of Procedure, in the Constitution and in the statutes— it must be held that where the Legislature speaks of an appeal to the Supreme Court it means an appeal, not to the Appellate Division, but to the Special Term.

The next question is as to the practice to be adopted in cases of this character. In the case at bar, upon proper petitions appealing from his action, orders were made directing the mayor of the city of Oswego to certify and return to the court at a Special Term thereof a record of his proceedings in relation to the removal of the petitioners, the charges preferred by him, the answer to the charges, and all of the evidence, papers, documents, records, proofs, testimony, and proceedings had or taken before him in the above matters. It was further ordered that at the same time and place the mayor show cause why the appeals should not prevail and why his proceedings in relation to the removal of the petitioners should not be reversed and set aside. While this may not be the only proper method of bringing the question before the Special Term, it seems to be one that is expeditious and that is suited to the requirements of the situation.

Upon the return day the mayor produced a copy of the charges, a copy of the answers which were served in reply to them, and a stenographic record of the proceedings before him. There should have been, in addition, a certificate from him that the papers so produced constituted a complete record of all proceedings before him in relation to the matter. It was conceded on the argument, however, that they did in fact constitute such a complete record, and for the purposes of this appeal that statement may be deemed sufficient. It appears, therefore, that in the cases of O'Neil, Carroll, and Branagan charges were filed, accompanied by a notice directing them to appear before the mayor at an appointed time and give reasons why they should not be removed and dismissed from office. The commissioners did appear and filed a paper denying the charges and each of them. The charges were then read and the commissioners were asked whether there was any specific denial. In reply the mayor was told that an answer had been filed to all the charges and that the commissioners awaited further action on his part. Thereupon the mayor announced that the hearing was closed. The commissioners then asked that they be presented with the evidence, proofs, and testimony against them, and that they be confronted with the witnesses. This was denied, and the mayor removed the commissioners. Substantially the same proceedings took place in the case of Commissioner Hart, except that various questions were asked certain persons present and various statements were made by them, including references to certain records and documents. Against the objection of the commissioner these statements were made without the witnesses being sworn. Even if under oath, the testimony given would have been incompetent.

The mayor and the city attorney seem to have proceeded upon the theory that the former had no power to administer an oath or to summon witnesses. That in this they were mistaken may be seen by refer-

ence to sections 843 and 845 of the Code of Civil Procedure. The removal of the commissioners is to be upon proof, for cause, and not otherwise. The commissioners are to be furnished with a copy of the charges preferred and given an opportunity to be heard. This means a judicial investigation. The power is not an arbitrary one, but can be exercised only when charges sufficient in their nature to warrant a removal have been preferred and proven to be true. The defendant has the right to demand the production of witnesses, to demand that their testimony should be given under oath, to be given an opportunity to cross-examine them, and to call other witnesses in his defense. He has the right to be represented by counsel. It is true that courts will not be astute to reverse the action of the mayor for merely formal errors as to the admission or rejection of testimony, but there must be substantially a fair trial and a fair exercise by the officer making the removal of his judgment on the evidence taken before him. People ex rel. Ryan v. Wells, 86 App. Div. 270, 83 N. Y. Supp. 789; People ex rel. Kasschau v. Police Commissioners, 155 N. Y. 40, 49 N. E. 257; People ex rel. Mayor v. Nichols, 79 N. Y. 582. The action of the mayor in the case at bar entirely failed to comply with the requirements of the statute. The proceedings were wholly irregular. His action, therefore, in removing the appellants in this case from office, was unauthorized, and must be reversed. The appellants themselves must be reinducted into the offices from which they have been illegally removed.

These appeals are special proceedings. Costs may therefore be awarded, in the discretion of the court, at the rates allowed for similar services in an action. Code Civ. Proc. §§ 3240, 3334. Costs to the amount of $60 may be allowed to the appellants O'Neil, Carroll, and Branagan, and the same amount to the appellant Hart. Code Civ. Proc. § 3251, subd. 4.

Orders in compliance with the foregoing opinion may be prepared, and, if not agreed upon, will be settled upon proper notice.

Ordered accordingly.